■ SHERWOOD A. SALVAN, Appellant, v 127 MANAGEMENT CORP. et al., Respondents. — Judgment, Supreme Court, New York County (Sherman, J.), entered on November 22, 1982, which granted defendants' motion, made after both sides had rested, to dismiss the complaint for failure to prove a prima facie case, unanimously modified, on the law, to the extent of reinstating the first, second and fourth causes of action and remanding those causes for a new trial, with costs to abide the event, and, except as thus modified, affirmed. Order of the same court, entered December 1, 1982, denying plaintiff's motion to set aside the judgment dismissing the complaint on the ground of newly discovered evidence unanimously affirmed, without costs or disbursements. ¶ This is an action by a rent-controlled tenant against his landlord for the recovery of both compensatory and punitive damages for the intentional infliction of mental distress, retaliatory eviction, negligence, and breach of the warranty of habitability. The trial evidence disclosed the following. The apartment in question is located in an East Side building which is one of five contiguous properties. In 1961, prior to plaintiff's taking occupancy, the then landlord converted plaintiff's first-floor apartment into a duplex by connecting it to the ground floor with an interior staircase. On the basis of this alteration the then landlord applied for and was granted a rent increase. In 1969 the apartment was rented to plaintiff as a duplex. He lived there in relative peace until December 11, 1979 when the premises were sold to defendants. In 1976 the original lease was modified to allow plaintiff to erect a greenhouse in the back yard. On September 30, 1976 violations were placed against the premises for the 1961 alteration and the greenhouse. Plaintiff's effort to remove the greenhouse violation by filing plans with the Buildings Department was refused by defendants' predecessor in title, whose consent was required. ¶ Immediately after their purchase of the premises, defendants changed the locks to the basements of the five buildings and relieved the superintendent of his keys to the boiler room. On December 20, 1979, nine days after the sale, hot water came cascading down into plaintiff's apartment as a result of a separation in the water pipes in the unoccupied apartment above his, which was being converted into two studio apartments. Plaintiff suffered damage to his personal property in excess of $2,700. Defendants refused to do the repairs made necessary by this incident. At or about this time the tenants were being deprived of heat and hot water for extended periods of time. At one point they were without heat and hot water for five weeks. The tenants' reported requests for repairs went unanswered and they were constantly being threatened with eviction. Vacated apartments remained unrented. Apparently, defendants were contemplating a conversion of the buildings to cooperative ownership. Plaintiff's rent was refused over an eight-month period on the grounds that he was responsible for the violation caused by the 1961 alteration. When defendants belatedly attempted to negotiate plaintiff's rent checks some were honored; others were dishonored as stale. Finally, plaintiff and 14 other tenants filed harassment complaints at the Office of Rent Control. Hearings were held over a period of 20 days. The hearing officer sustained the charge of harassment and recommended a fine of $7,100. His report, however, was not issued until one month after the trial herein had been concluded. The Commissioner adopted both the finding and recommendation of the hearing officer. ¶ After granting plaintiff's motion to conform the pleadings to the proof Trial Term dismissed the complaint without submitting the case to the jury. Since we believe this was error, at least to all but the negligence cause of action, we modify and remand for a new trial on all the other causes of action. The record contains unrebutted testimony that after defendants took the control of the heating plant away from the superintendent a pattern emerged where the tenants were denied heat and hot water and other essential services. Defen-

dants refused to paint when required, to provide exterminator services in the face of widespread vermin and rodent infestation or to repair conditions which were manifestly dangerous to the tenants' health and safety. Thus, we find that a prima facie case was made out for breach of the warranty of habitability. (See *Park West Mgt. v Mitchell*, 47 NY2d 316.) Plaintiff also made a sufficient showing of landlord retaliation by evidence that defendants instituted a dispossess proceeding against him within six months after the filing of the harassment complaint. In such circumstances a rebuttable presumption is statutorily created that the landlord is acting in retaliation. (Real Property Law, § 223-b, subd 5.) We also believe that the evidence supports the cause of action for intentional infliction of mental distress even though in his testimony plaintiff might not have verbalized his injured feelings to the court's satisfaction. The emotional distress caused by defendants' conduct is manifest and well within the ken of the average juror. We do agree, however, that plaintiff failed to make out a prima facie case in negligence with respect to the flooding incident. The record reflects that the superintendent shut off the water immediately once he became aware of the condition. Plaintiff offered no evidence that defendants' negligence caused the pipes to separate or that they were tardy in their response. We note that plaintiff's other causes of action were discontinued prior to trial. Plaintiff's motion to set aside the judgment was properly denied since, as Trial Term correctly noted, the administrative determination did not constitute newly discovered evidence. Concur — Murphy, P. J., Sandler, Sullivan, Carro and Kassal, JJ.