James Green, Respondent, v Fischbein Olivieri Rozenholc & Badillo et al., Appellants.

First Department, October 23, 1986

### APPEARANCES OF COUNSEL

*Mitchel P. Heaney* of counsel *(Kenneth G. Schwartz* with him on the brief; *Fischbein Olivieri Rozenholc & Badillo,* attorneys), for appellants.

*Anne Jaffe* for respondent.

### OPINION OF THE COURT

FEIN, J.

This action arises from a stormy relationship between plaintiff tenant and defendant landlord David C. Walentas and Walentas' counsel (the law firm). In 1979, and for some time prior thereto, plaintiff was the tenant of apartment No. 8D in premises 180 West 58th Street in Manhattan. Walentas purchased the building in 1979. Shortly thereafter he instituted proceedings to convert the premises to cooperative ownership. Walentas was represented throughout by defendant law firm. A tenants' association was soon formed to respond to the proposed cooperative conversion plan and alleged diminution of services. Plaintiff was an active member of the committee which, in 1983, succeeded in having the original eviction plan for the building annulled and vacated *(Alwyn Ct. Tenants' Assn. v Walentas,* 59 NY2d 652).

Prior to that determination, it is alleged that Walentas, with the advice, consent, approval and support of the law firm as his counsel, engaged in a course of conduct designed to harass, intimidate and interfere with plaintiff's tenancy. Five separate actions were allegedly brought against plaintiff between 1979 and 1982 in retaliation for his participation in the tenants' association. Three eviction proceedings were based upon the ground that plaintiff was not the lawful tenant of the premises and one was based on the claim that he allowed others to occupy the apartment.

The first eviction proceeding was dismissed in December 1979 upon the landlord's failure to appear. The second, brought in February 1980, named plaintiff's mother as corespondent, alleging that she was allowing others to use the apartment. That proceeding was discontinued by the landlord "with prejudice". The third proceeding, commenced in Novem-

ber 1980, sought a declaration as to plaintiff's status as a tenant and was dismissed on res judicata grounds as predicated on the same grounds as the prior proceeding.

In late 1981 the landlord served a notice to cure on plaintiff, alleging there were unauthorized additional occupants in the premises. It thus became necessary for plaintiff to bring an action to affirm his right to have roommates. Plaintiff was also one of the members of the tenants' association sued by Walentas for abuse of process in connection with an action the association had brought, seeking services and repairs for the tenants. Landlord's action was dismissed upon the tenants' motion. Additionally, the complaint alleges that Walentas interfered with mail and other deliveries and deprived plaintiff of essential services during the entire period.

After the Court of Appeals annulled the declaration of the effectiveness of the original cooperative conversion eviction plan in 1983, the Attorney-General accepted for filing an eleventh amendment to the plan, converting it to a noneviction plan and authorizing Walentas to purchase tenants' apartments at an agreed price.

Plaintiff agreed to sell his apartment to Walentas for $78,000. An agreement was executed by all the parties to this action, including defendant law firm as attorneys for Walentas, in order to facilitate surrender of the apartment. The law firm was to hold the $78,000 in escrow. Plaintiff was to vacate and leave the premises in "broom clean" condition on or before May 12, 1984 after giving 15 days' notice of the exact date of surrender. Plaintiff removed on May 1 and demanded payment of the $78,000. The landlord, and the law firm as escrow agent, tendered $76,000 to plaintiff's counsel contending that plaintiff was not entitled to the remaining $2,000 because the premises were not "broom clean", that plaintiff had not given the requisite 15 days' notice, and that the May 1984 rent was not paid.

Plaintiff immediately returned the $76,000 and instituted this action alleging breach of contract and a variety of tort claims in a lengthy complaint. Plaintiff moved for partial summary judgment on the first cause, and defendants cross-moved to dismiss the complaint. Justice Sherman at Special Term granted partial summary judgment to plaintiff in the sum of $76,000 on the first cause of action for breach of the August 1983 surrender agreement and granted defendants' cross motion to the extent of directing plaintiff to serve an

amended complaint separately stating and numbering each of his causes of action. Justice Sherman found questions of fact requiring a trial as to whether plaintiff was entitled to the remaining $2,000, depending upon whether the apartment was in "broom clean" condition and whether plaintiff had failed to give 15 days' notice prior to vacating, and therefore, whether Walentas was entitled to rent for the month of May 1984.

It is undisputed that the $76,000 has been paid to plaintiff. Plaintiff thereafter served an amended verified complaint setting forth 14 causes of action. Defendants moved to dismiss all causes for legal insufficiency (CPLR 3211 [a] [7]). In a careful and thoughtful opinion, Special Term dismissed all causes except (1) the first cause of action for breach of contract; (2) the fifth cause of action for plaintiff's litigation expenses and attorney's fees in bringing this action; (3) the tenth cause of action insofar as it alleged retaliatory eviction; (4) the eleventh cause of action for intentional infliction of mental and emotional distress; and (5) the twelfth cause of action seeking damages for breach of the warranty of habitability.

Defendants appeal from the denial of their cross motion to dismiss all causes. The law firm contends that no causes of action are properly asserted against it because it was not in privity with plaintiff with respect to any of the agreements upon which the action is based and that it acted solely as counsel to Walentas. It further contends that the entire complaint should have been dismissed.

It is axiomatic that all of the allegations of the complaint must be deemed true for purposes of a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7). (*Williams v Williams*, 23 NY2d 592; *Westhill Exports v Pope*, 12 NY2d 491; *Foley v D'Agostino*, 21 AD2d 60.)

It is clear that the causes of action premised entirely on the landlord-tenant relationship should be dismissed as against the law firm. The tenth cause of action, sustained by Special Term as a cause of action for retaliatory eviction, is properly pleaded against the landlord (Real Property Law § 223-b [3]). Sufficient is alleged to sustain the cause of action as a pleading. However, this cause is not properly pleaded against the law firm since it emanates solely from the landlord-tenant relationship between plaintiff and Walentas.

Similarly, the twelfth cause of action, which is premised upon breach of warranty of habitability due to inadequacy or

lack of heat and hot water, cracked and peeling paint and plaster, rotted window sills and frames and similar deficiencies, states a proper cause of action. It may well support a claim for punitive damages *(see, Century Apts. v Yalkowsky,* 106 Misc 2d 762). However, this cause of action, arising solely out of the landlord-tenant relationship, states no cause of action against the law firm and should be dismissed as against it.

The first cause of action, for breach of contract, sustained by Special Term as it had previously been sustained by Justice Sherman in granting summary judgment for $76,000, adequately states a cause of action for the remaining $2,000 and such other damages as may be proven. The agreement made the attorneys escrow agents, although they signed it as attorneys for the landlord. If, indeed, there is no merit to the landlord's claim of breach, a good cause of action is stated both against the landlord and the attorneys.

The issue apparently turns on whether plaintiff's alleged failure to remove carpets and linoleum rendered the premises not "broom clean", and whether his alleged failure to give proper notice entitled the landlord to May rent. If plaintiff is correct, the obligation of the attorneys, as escrow agents, to pay the money over to him could make them liable to him *(Farago v Burke,* 262 NY 229, 233). An escrow agent is a trustee for both parties, under a duty not to deliver the escrow to anyone except upon strict compliance with the conditions, and subjects himself to damages for his failure to so comply. The law firm's letter to plaintiff, purporting to resolve the issue in favor of Walentas, is hardly dispositive. It could have brought an action in interpleader (CPLR 1006).

However, we disagree with Special Term in sustaining so much of the first cause of action as asserts entitlement to punitive damages. This is a breach of contract action with respect to which triable issues properly have been found. There is no showing of "bad faith evincing a 'disingenuous or dishonest failure to carry out a contract' " for which "punitive damages may be awarded" *(Williamson, Picket, Gross v Hirschfeld,* 92 AD2d 289, 295, *appeal dismissed* 60 NY2d 585). Punitive damages are not available for mere breach of contract, where only a private wrong and not a public right is involved *(Garrity v Lyle Stuart, Inc.,* 40 NY2d 354).

The eleventh cause of action, seeking damages for intentional infliction of mental and emotional distress, alleges a

pattern of conduct which could be found to have been intended to interfere with plaintiff's quiet enjoyment of his tenancy, and to subject him to mental and emotional distress and the requirement to hire and pay counsel with respect to the various unfounded actions brought against him. As previously noted, the allegations of a complaint must be accepted as true in order to determine whether it states a cause of action. A cause of action for the intentional infliction of emotional distress is pleaded where it is alleged that "severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation" *(Nader v General Motors Corp.,* 25 NY2d 560, 569). Liability may be found "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Restatement [Second] of Torts § 46 comment d, cited in *Fischer v Maloney,* 43 NY2d 553, 557; *see, Freihofer v Hearst Corp.,* 65 NY2d 135, 143.)

This cause of action is founded upon the allegedly baseless eviction proceedings and other actions brought against plaintiff over a period of several years. It is alleged that defendants' acts in serving notices and commencing legal proceedings against plaintiff were all without legal cause or justification and were intended solely to injure plaintiff in his occupancy as a tenant. Also alleged are the severe interruptions or discontinuance of services, the drastic deterioration of plaintiff's living conditions, the interference with his mail and the verbal abuse of plaintiff and his guests. These are sufficient to allege a cause of action against Walentas as landlord *(James v Saltsman,* 99 AD2d 797; *see, Salvan v 127 Mgt. Corp.,* 101 AD2d 721, *appeal dismissed* 63 NY2d 773; *Halio v Lurie,* 15 AD2d 62).

The cause is also properly pleaded against the law firm. It is undisputed that the firm represented Walentas in these four eviction proceedings and other legal proceedings during the conversion process. If plaintiff can show, as he alleges, that there was no legal basis for these proceedings, the law firm may not take refuge behind the attorney-client relationship to insulate itself from liability. It is plain that an attorney may be held liable to a nonclient "as a consequence of the attorney's wrongful or improper exercise of authority, or where the attorney has committed fraud or collusion or a malicious or tortious act" *(Singer v Whitman & Ransom,* 83 AD2d 862,

863). As stated in *Newburger, Loeb & Co. v Gross* (563 F2d 1057, 1080, *cert denied* 434 US 1035), "Under New York law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he 'did something either tortious in character or beyond the scope of his honorable employment.' * * * Thus, while an attorney is privileged to give honest advice, even if erroneous, and generally is not responsible for the motives of his clients, admission to the bar does not create a license to act maliciously, fraudulently, or knowingly to tread upon the legal rights of others."

In our view, the amended complaint sufficiently alleges facts entitling plaintiff to prove that the law firm violated that standard *(Singer v Whitman & Ransom, supra)*.

Moreover, plaintiff is entitled to claim punitive damages with respect to this cause of action. A claim for punitive damages does not state a separate cause of action *(Bunker v Bunker,* 73 AD2d 530). Such a claim constitutes merely an element of the total damages claimed on the underlying cause of action *(APS Food Sys. v Ward Foods,* 70 AD2d 483; *Goldberg v New York Times,* 66 AD2d 718; *M.S.R. Assoc. v Consolidated Mut. Ins. Co.,* 58 AD2d 858). Although not specifically asserted in this cause of action, a punitive damage claim, read separately, may be included in that plaintiff has, in this cause of action, incorporated all prior paragraphs of the complaint. The fact that some of the paragraphs are included in causes of action which have been properly dismissed does not eliminate them from the complaint. The complaint is deemed to demand punitive damages recoverable if the proof establishes that there was, as alleged, "such gross, wanton, or willful fraud or other morally culpable conduct to a degree sufficient to justify an award of punitive damages." *(Borkowski v Borkowski,* 39 NY2d 982, 983.) The form of action is not dispositive *(I.H.P. Corp. v 210 Cent. Park S. Corp.,* 16 AD2d 461, *affd* 12 NY2d 329; *Gostkowski v Roman Catholic Church,* 262 NY 320, 325; *Le Mistral, Inc. v Columbia Broadcasting Sys.,* 61 AD2d 491, *appeal dismissed* 46 NY2d 940).

Finally, the fifth cause of action appears to assert a claim for attorney's fees in this action. It is well settled that attorney's fees are not recoverable unless there is a contractual or statutory provision therefor *(Mighty Midgets v Centennial Ins. Co.,* 47 NY2d 12, 21-22). Nor are they recoverable for bringing an action unless the sole motivation of the malicious acts complained of constituted a "disinterested malevolence" on

the defendant's part *(United Pickle Co. v Omanoff,* 63 AD2d 892, 893). The cause of action here pleaded does not claim "disinterested malevolence". Hence, plaintiff is not entitled to recover attorney's fees for bringing and maintaining this action. However, plaintiff's attorney's fees with respect to the various eviction and other legal proceedings may be proven as part of the damages under the cause of action for intentional infliction of emotional distress. They were part of the economic injury allegedly inflicted on plaintiff as part of defendants' campaign to evict him. As so limited, the fifth cause of action is sustained as against both defendants.

Accordingly, the order, Supreme Court, New York County (Beverly S. Cohen, J.), entered September 23, 1985, denying defendants' motion insofar as it sought dismissal of the first, fifth, tenth, eleventh and twelfth causes of action of the amended verified complaint for failure to state a cause of action pursuant to CPLR 3211 (a) (7), should be modified, on the law, to dismiss the tenth and twelfth causes of action as against defendant Fischbein Olivieri Rozenholc & Badillo, and as so modified, it should otherwise be affirmed, without costs.

CARRO, J. P., LYNCH AND ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on September 23, 1985, unanimously modified, on the law, to dismiss the tenth and twelfth causes of action as against defendant Fischbein Olivieri Rozenholc & Badillo, and as so modified, it is otherwise affirmed, without costs and without disbursements.